UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SJOCC, INC., Appellant, v. BELVEDERE DEBT HOLDINGS, LLC, *et al.*, Appellee. | Case No. 3:25-cv-00576-MMD<br>Bankruptcy Case No. 23-05019-HLB<br>Adversary No. 25-00010<br>ORDER |

## I. SUMMARY

Appellant SJOCC Inc. appeals the bankruptcy court's orders denying its motion to remand to state court and granting Appellants' motion to dismiss without leave to amend. (ECF Nos. 12 at 7; 24 at 7.)[1] The bankrupty court previously determined that it had subject matter jurisdiction over Appellant's complaint and denied Appellant's motion to remand accordingly. Therereafter, the bankruptcy court granted Appellees' motion to dismiss on all causes of action, except the breach of contract claim against BTM. (ECF No. 12 at 12.) On appeal, Appellant seeks to vacate the bankruptcy court's orders. (ECF No. 12 at 45.) As further explained below, the Court affirms the bankruptcy court's orders.

## II. BACKGROUND

The underlying dispute has an extensive history, but primarily concerns a December 2014 settlement ("Settlement Agreement") that sets out all parties'[2] interests

[1]Appellant SJOCC Inc. filed an opening brief (ECF No. 12). Appellees filed an answering brief. (ECF No. 16.) Appellant then filed a reply brief. (ECF No. 25.)

[2]For brevity, the Court refers to the parties in connection with Appellees as follows. Appellee Belvedere Debt Holdings, LLC, et al. is collectively referred to as "Appellees." "SABT Parties" includes Secured Assets Belvedere Tower ("SABT"), Ananda Advisors, LLC, Ananda Partners III, LLC, Martel Jed Cooper, M. Gregory Smith, Naju, LLC, Kalassen, LLC, Markal Holdings Family Limited Partnership, and Jugg Holdings Family

in the sale of 144 units at the Belvedere condominiums ("the Property"). (ECF Nos. 12 at 8; 16 at 9.) In pertinent part, the Settlement Agreement established a "waterfall" payment schedule that distributed to each party a portion of the sale proceeds in successive order, including SABT, BTM, BDH, and Appellant's predecessor-in-interest, David Lonich ("Lonich"). (ECF No. 12-1 at 30.) Under the Settlement Agreement, Lonich was to be paid 20% of the gross sales proceeds in excess of $17,500,000, in exchange for releasing any interest he had in SABT, BTM, or the Property.[3] (ECF Nos. 12 at 8; 12-1 at 31-32; ) Moreover, as part of the Settlement, BDH acquired SABT and BTM's loan on the Property. (ECF Nos. 12 at 9; 16 at 9).

SABT subsequently defaulted on its loan that was secured by the Property, and filed for Chapter 11 bankruptcy. (ECF Nos. 12 at 9; 16 at 10.) The bankruptcy court approved SABT's Plan of Reorganization ("Plan"). (ECF No. 12 at 9.) As part of the Plan, SABT and BTM agreed that the amounts payable to Lonich under the Settlement Agreement would include an additional 12 condominium units. (ECF No. 16 at 10.) This now meant Lonich's, and subsequently Appellant's, payment would be based on the sale of 156 units of the Property. (*Id.*)

However, in December 2018, BDH, SABT, and BTM entered into a Forbearance Agreement that assigned all the proceeds from the sale of the 156 units to BDH and would "reallow" a portion of the proceeds to SABT and BTM. (ECF Nos. 12 at 10; 16 at 11.) The Forbearance Agreement did not mention any disbursement to Appellant's predecessor, Lonich. (ECF No. 12 at 10.) Moreover, Appellant alleges that Lonich was not a party to the Forbearance Agreement, nor did he grant consent to the Agreement. (*Id.*) Appellant asserts it has not received any payments in accordance with the Settlement Agreement

---

Limited Partnership. "BTM Parties" includes BTM, LLC ("BTM"), Greenbriar Construction Corporation, Greenbriar Realty, Inc., PrimeVest Realty, Inc., Biganeh Madjlessi, and Michael Madjlessi. "BDH Parties" includes Alexander Kendall, Elizabeth Kendall, and Belvedere Debt Holdings, LLC ("BDH"). (ECF No. 12 at 7-8.) Individual Appellees will be referred to by their name.

[3]Appellant is the successor-in-interest to David Lonich. (ECF No. 8, 10). In September 2018, Lonich assigned to his rights under the Settlement Agreement to MRV. (ECF No. 16 at 10.) In May 2023, MRV then assigned those rights to Appellant. (*Id.*)

even though proceeds from the sale of the Property have allegedly exceeded $17,500,000. (*Id*.)

Appellant filed its initial complaint in Sonoma County Superior Court, seeking payment under the Settlement Agreement. (ECF No. 12-2 ("Complaint").)[4] Shortly after, Appellees removed the case to the bankruptcy court. (ECF No. 12 at 11.) Appellant then moved to remand, arguing the bankruptcy court lacked subject matter jurisdiction. (*Id.*) Appellees objected, asserting that the bankruptcy court had "related to" or "ancillary" jurisdiction over the Complaint. (*Id.*) After conducting a hearing on Appellant's motion to remand, the bankruptcy court determined it had subject matter jurisdiction over Appellant's Complaint and, accordingly, denied Appellant's motion to remand on March 15, 2024. (ECF Nos. 12 at 11; 12-1 at 187.)

Appellees then moved to dismiss the Complaint. (ECF No. 12 at 11.) On September 15, 2024, the bankruptcy court granted dismissal without leave to amend with respect to all claims, except the breach of contract claim against BTM. (*Id.* at 12.)

Soonafter, Appellant moved for reconsideration of the portion of the order denying it leave to amend. (*Id.*) The bankruptcy court denied reconsideration on procedural grounds. (*Id.*) The bankruptcy court subsequently entered its final order dismissing all claims against Appellees, except the breach of contract claim against BTM. (ECF No. 24 at 6-7 ("Final Order").)

## III. DISCUSSION

### A. Jurisdiction

As a threshold matter, the Court must first determine whether it has jurisdiction over the appeal of the bankruptcy court's decisions. The Court concludes that it has jurisdiction under 28 U.S.C. § 158(a).

"Jurisdiction over an appeal from an order of a bankruptcy court is governed by 28 U.S.C. § 158." *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005). Appellate jurisdiction exists

[4]Appellant's Complaint alleges five causes of action: breach of the Settlement Agreement, breach of fiduciary duty, declaratory relief, accounting, and constructive trust. (ECF No. 12 at 10-11.)

when the bankruptcy court order is a final order. *See* 28 U.S.C. § 158(a)(1) (granting district courts appellate jurisdiction over appeals "from final judgments, orders, and decrees…" in bankruptcy proceedings). Generally, "a final decision is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *See In re Bonham*, 229 F.3d 750, 761 (9th Cir. 2000) (internal citations and quotations omitted). Under the Ninth Circuit's finality rule, a bankruptcy court order is considered final and, thus, appealable "where it 1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed."[5] *See id.* (quoting *Law Offices of Nicholas A. Franke v. Tiffany* (*In re Lewis*), 113 F.3d 1040, 1043 (9th Cir. 1997); *see also Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015) (holding that orders in bankruptcy cases may be immediately appealable "if they finally dispose of discrete disputes within the larger case") (citing *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.,* 547 U.S. 651, 657 & n.3 (2006)).

Here, Appellees argue that Appellant is untimely appealing the bankruptcy court's March 15, 2024 order denying the motion to remand and its September 15, 2024 order granting Appellees' motion to dismiss. (ECF No. 16 at 12.) Appellees contend that both orders are not final and, thus, non-appealable. (ECF No. 16 at 13-14.)[6] However, the bankruptcy court issued its Final Order on April 15, 2026, certifying its judgment on both motions as final. (ECF No. 24 at 7.) Appellant prematurely filed this appeal on January 12, 2026, four months before issuance of the Final Order. (ECF No. 12 at 1.) Thus, in determining its jurisdiction, the Court must consider whether (1) Appellant's premature appeal was subsequently cured by the Final Order and (2), if so, whether the appeal was timely.

///

[5]"Whether a bankruptcy court's decision is final…is a question of law reviewed de novo." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs* (*In re City of Desert Hot Springs*), 339 F.3d 782, 787 (9th Cir. 2003) (internal citation omitted).

[6]Appellees also argue that the appealed orders do not meet the collateral order doctrine. (ECF No. 16 at 15-16.)

**1. Premature Appeal**

Even when bankruptcy court orders are considered interlocutory, "subsequent events can validate a prematurely filed appeal." *In re Rains*, 428 F.3d at 901. In the Ninth Circuit, once a final judgment is entered, an appeal from an otherwise interlocutory order is considered appealable. *See Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.)*, 935 F.2d 1071, 1075 (9th Cir. 1991) (citing *Anderson v. Allstate Ins. Co.,* 630 F.2d 677, 681 (9th Cir. 1980). Accordingly, a premature appeal can be "cured by the entry of final judgment." *Id.; see also Special Investments Inc. v. Aero Air Inc.*, 360 F. 3d 989, 993 (9th Cir. 2004) ("a prematurely filed notice of appeal can be cured if the rest of the claims are disposed of in a subsequent final decision terminating the litigation") (citation omitted). Moreover, a "finality defect" of a bankruptcy court's interlocutory order is considered "'cured' when another order is entered that fully and finally disposes of the matter." *In re Rodriguez*, 620 B.R. 94, 99 (B.A.P. 9th Cir. 2020) (citing to *Parks v. Drummond* (*In re Parks*), 475 B.R. 703, 706 (9th Cir. 2012)).

Here, the appeal was filed four months before the bankruptcy court's Final Order. (ECF No. 12 at 1.) At the time of filing, the appeal was premature because the bankruptcy court had not yet issued a final judgment on either matter.[7] (*Id.* at 12.) Once the bankruptcy court entered its Final Order "fully and finally dispos[ing]" of the litigation, Appellant's appeal was "cured" of its prematurity. *See Special Investments Inc.*, 360 F. 3d at 993; *In re Rodriguez*, 620 B.R. at 99. In its Final Order, the bankruptcy court "certified as a final judgment" its order dismissing the causes of action against Appellees, except the breach of contract action against BTM. (ECF No. 24 at 7.) Because the bankruptcy court certified its order as a final judgment as to Appellees' motion to dismiss, the Final Order cured Appellant's premature appeal.

///

[7]At the parties' stipulation, the Court stayed the appeal so that Appellant could file a Rule 54(b) motion with the bankruptcy court to enter final judgment. (ECF No. 25 at 6.)The bankruptcy court's Final Order was an entry of judgment on the Rule 54(b) motion. (ECF No. 24 at 6-7.)

**2. Timeliness of Appeal**

Even if a premature appeal is cured by a subsequent final judgment, it must still be timely. Under Federal Rule of Bankruptcy Procedure 8002(a)(1), a notice of appeal must be filed within 14 days of the date of entry of judgment. Fed. R. Bankr. P. 8002(a)(1). However, "[a] notice of appeal filed after the bankruptcy court announces a decision or order—but before the entry of the judgment, order, or decree—is treated as filed on the date of and after the entry." Fed. R. Bankr. P. 8002(a)(2). An order falls within this "safe harbor" provision of Rule 8002(a) if the order prematurely appealed from "fully determine[s] the issue at hand such that it is reasonable for the appellant to believe that his time to appeal has begun." *In re Kyung Sook Kim*, 433 B.R. 763, 776 (D. Haw. 2010); *see also In re Jack Raley Const., Inc*., 17 F.3d 291, 294 (9th Cir.1994) ("A premature notice of appeal is valid when all that remained was the clerk's ministerial task of entering a Rule 58 judgment.") (citation and quotation signals omitted)).

The bankruptcy court's Final Order was entered on April 15, 2026, and the time to appeal began the same day. (ECF No. 24 at 7.) Though Appellant filed its appeal four months prior, the appeal was filed after the bankruptcy court's earlier pronouncements on the motion to remand and motion to dismiss. (ECF No. 12 at 12.) Under Rule 8002(a), the appeal will be treated as filed on the day the bankruptcy court entered the Final Order "fully determin[ing] the issues at hand." *In re Kyung Sook Kim*, 433 B.R. at 776. Therefore, despite the prematurity of the appeal, the appeal falls within Rule 8002(a)'s safe harbor provision.

Because the prematurity of the appeal was cured by the bankruptcy court's Final Order, and the appeal was considered timely based on the date of entry, the Court finds that the bankruptcy court's challenged orders are final and appealable under 28 U.S.C. § 158(a). Accordingly, the Court's appellate jurisdiction is proper.

**B. Standard of Review and Review of Challenged Decisions**

The Court next turns to the applicable standards of review. A bankruptcy court's conclusions of law are reviewed de novo, "including its interpretation of the Bankruptcy

Code," and its factual findings are reviewed for clear error. *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005); *see also In re Salazar,* 430 F.3d 992, 994 (9th Cir. 2005). The bankruptcy court's factual findings are clearly erroneous only if the findings "leave the definite and firm conviction" that the bankruptcy court made a mistake. *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005) (citation omitted). "A bankruptcy court abuses its discretion if it applies the law incorrectly or if it rests its decision on a clearly erroneous finding of a material fact." *In re Brotby*, 303 B.R. 177, 184 (B.A.P. 9th Cir. 2003). In reviewing a bankruptcy court's decision, the Court ignores harmless errors. *See In re Mbunda*, 484 B.R. 344, 355 (B.A.P. 9th Cir. 2012).

The Court may affirm the bankruptcy court's decision "on any ground fairly supported by the record." *In re Warren*, 568 F.3d 1113, 1116 (9th Cir. 2009). In addition, the Court need not address arguments not raised in the trial court but "may do so to (1) prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when a change of law during the pendency of the appeal raises a new issue, or (3) when the issue is purely one of law." *In re Lakhany*, 538 B.R. 555, 560 (B.A.P. 9th Cir. 2015).

Here, Appellant asserts (1) the bankruptcy court improperly denied the motion to remand because it lacked subject matter jurisdiction and (2) the bankruptcy court improperly granted the motion to dismiss. The Court addresses each argument.

**1. Motion to Remand – Bankruptcy Court Jurisdiction**

Appellant argues that the bankruptcy court lacked subject matter jurisdiction over the Complaint because it neither "relate[s] to" nor "aris[es] under" a chapter 11 bankruptcy action. [8] (ECF Nos. 12 at 13.) Appellees counter that the bankruptcy court properly found it had "related to" jurisdiction or, in the alternative, it had "ancillary" jurisdiction.[9] (ECF No. 16 at 20.) The Court agrees with Appellees.

[8]The parties do not dispute that the bankruptcy court did not exercise "arising under" jurisdiction. (ECF No. 12 at 13.)

[9]Appellees note that the bankruptcy court did not expressly state which doctrine it asserted its jurisdiction under, but that its "express findings" suggested the bankruptcy court exercised "related to" jurisdiction. (ECF No. 16 at 20, n. 8.)

**a. "Related To" Jurisdiction**

A bankruptcy court can exercise original jurisdiction over all civil cases arising in or "related to" chapter 11 cases. 28 U.S.C. § 1334(b). A bankruptcy court's "related to" jurisdiction is "very broad" and includes "nearly every matter directly or indirectly related to the bankruptcy." *In re Mann*, 907 F.2d 923, 926 n.4 (9th Cir. 1990). The scope of the bankruptcy court's jurisdiction depends on whether it is a pre-confirmation or post-confirmation case. In post-confirmation cases, as is the case here, the scope of a bankruptcy court's jurisdiction is based on the "close nexus" test. *In re Pegasus Gold Corp*., 394 F.3d 1189, 1194 (9th Cir. 2005). Claims are sufficient to meet the "close nexus" test when they relate to "matters 'affecting the 'interpretation, implementation, consummation, execution, or administration of [a] confirmed plan.'" *Id.* (citation omitted). The test requires "particularized consideration of the facts and posture of each case, as the test contemplates a broad set of sufficient conditions and 'retains a certain flexibility.'" *In re Wilshire Courtyard*, 729 F.3d 1279, 1289 (9th Cir. 2013). As such, the test requires the Court to look at the "whole picture." *Id.*

Looking at the whole picture, the Court finds that there is "related to" jurisdiction. The central dispute in this appeal revolves around Appellant's desire to enforce the payment schedule defined in the Settlement Agreement and to receive 20% of the gross excess sale proceeds. (ECF No. 12 at 8, 10.) As Appellees correctly point out, the Settlement Agreement was critical to SABT's Plan. (ECF No. 16 at 20-21.) In determining BTM and Lonich's unsecured claims following SABT's bankruptcy, Section 4.6 of the Plan explicitly incorporates the waterfall payment schedule defined in Paragraph 19 of the Settlement Agreement (ECF No. 12-1 at 128.)[10] Moreover, the Plan preserves Appellant's interests under the Settlement Agreement. For example, Paragraph 19(b)(7) of the Settlement Agreement initially sets out the distribution of gross sale proceeds in excess of $17,500,000 as 15% to SABT, 65% to BTM, and 20% to Lonich. (*Id.* at 31.) The Plan

[10]The Plan refers to the Settlement Agreement as the "Letter Agreement." (ECF No. 12-1 at 120.)

amends this by dividing the proceeds as 64% to SABT, 16% to BTM, and retaining Lonich's share at 20%. (*Id.* at 129.) The Plan was confirmed by the bankruptcy court on June 21, 2017. (*Id.* at 142.) Because the Plan explicitly incorporates key provisions of the Settlement Agreement, the Court agrees that enforcing the Settlement Agreement would require interpreting and implementing a confirmed bankruptcy plan. (ECF No. 16 at 21.); *see In re Pegasus Gold Corp*., 394 F.3d at 1194 (finding that state and contract claims involving post confirmation conduct met the "close nexus" test because they could "affect the implementation and execution" of a confirmed plan). This necessarily creates a close nexus between the Complaint and the Plan.

The fact that the Settlement Agreement was subsequently modified does not affect the bankruptcy court's "related to" jurisdiction. Following the SABT bankruptcy, the Plan modified the Settlement Agreement to include the sale of 12 additional condos in the calculation of the sale proceeds due to Appellant. (ECF No. 12 at 9.) In fact, this modification was made to "resolve[] a dispute" between Appellant's predecessor, Lonich, and SABT and BTM. (ECF No. 16 at 10.) Additionally, as later addressed, Appellant's breach of contract and breach of fiduciary duty claims relate to its payment rights defined under the Settlement Agreement, which were incorporated into the Plan. Therefore, there exists a sufficient "close nexus" between the Complaint and the Plan because addressing subsequent disputes over payment of the sale proceeds requires interpreting, enforcing, and implementing aspects of the Plan. *See In re Pegasus Gold Corp*, 394 F.3d at 1194.[11]

The cases Appellant relies on as support for its argument that there is no "close nexus" are distinguishable. For example, in *In re Valdez*, 439 F. 3d 545, 548 (9th Cir.

---

[11]The Court rejects Appellant's argument that 11 U.S.C. § 349 is applicable. Appellant alleges that under the statute, the general rule is dismissal of a bankruptcy case "restore[s] all property rights to the position in which they were found at the commencement of the case." *In re Nash*, 765 F.2d 1410, 1414 (9th Cir. 1985) (internal quotations omitted). As such, Appellant insists there is no "close nexus" between the Complaint and the bankruptcy action because the SABT bankruptcy has been closed. (ECF No. 25 at 11.) However, in *In re Nash*, the Ninth Circuit applied the statute to a Chapter 13 proceeding whereas the the SABT Bankruptcy was a chapter 11 proceeding. Moreover, as Appellees point out, the SABT bankruptcy was settled, not dismissed. (ECF No. 16 at 22.)

2006), the Ninth Circuit found the bankruptcy court did not have "related to" jurisdiction to interpret a settlement agreement between appellant and debtor in a subsequent dispute between the appellant and the state because the action would not "affect the implementation and execution" of a confirmed bankruptcy plan. *Id.* There, appellant alleged that the debtor had fraudulently conveyed funds meant to pay its creditors (following a judgment in a breach of contract action) to the state to repay a loan. *Id.* at 547. The appellant and debtor later entered into a settlement agreement resolving the fraudulent conveyance claim, and the bankruptcy court approved the settlement and dismissed the underlying bankruptcy case. *Id.* Once the bankruptcy action was dismissed, the appellant returned to state court to seek judgment against the state on the fraudulent conveyance claim. *Id.* The bankruptcy court once again asserted jurisdiction to hear the case; however, the Ninth Circuit found it improperly did so because the issue lacked a "close nexus" with the bankruptcy action. *Id.* at 548. The court pointed out that, unlike other post-confirmation cases, there was no confirmed plan to interpret, implement, or execute, and no claim that the dispute between the parties would affect the bankruptcy estate. *Id.* In contrast, this appeal does involve a confirmed bankruptcy plan. As discussed, Appellant's claims turn on whether the payment schedule in the Settlement Agreement, as incorporated into the Plan, is being upheld. Whereas the bankruptcy court in *Valdez* had "no role in the resolution over the creditors' dispute" and its decision would not effect the settled bankruptcy estate, here, the bankruptcy court is determining the disposition of Appellant's rights to the sale proceeds under a confirmed bankruptcy plan. *See id; see also In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (citation omitted) ("[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action…and which in any way impacts upon the handling and administration of the bankrupt estate.") Therefore, *Valdez*, and other cases cited by Appellant, are distinguishable.[12]

---

[12]Appellant's cited decision of *In re Ray*, 624 F.3d 1124, 1135 (9th Cir. 2010) is also distinguishable. In *Ray*, the Ninth Circuit held the bankruptcy court did not have

**b. "Ancillary" Jurisdiction**

Ancillary jurisdiction is a "close cousin" of "related to" jurisdiction. *In re Wilshire Courtyard*, 729 F.3d at 1289. Ancillary jurisdiction can rest on one of two bases: (1) allow the bankruptcy court to dispose of "factually interdependent claims" or (2) allow a bankruptcy court the power to "vindicate its authority and effectuate its decrees." *In re Valdez*, 439 F.3d at 549. In other words, ancillary jurisdiction provides a bankruptcy court "the power to interpret and enforce its own orders." *In re Wilshire Courtyard*, 729 F.3d at 1289.

The Court finds the bankruptcy court has ancillary jurisdiction. Appellant attempts to use *In re Ray* once more to dispute ancillary jurisdiction. (ECF No. 12 at 18-19.) However, once again, the case is distinguishable from this appeal. In *In re Ray*, the Ninth Circuit held that a breach of contract claim "predicated on evidence that came to light after a bankruptcy case had closed, its creditors paid, and the debtor discharged, stretch[ed] the limits of…ancillary jurisdiction." 624 F.3d at 1136. Though the Plan closed SABT's bankruptcy action and the appeal concerns events that occurred after the Plan's confirmation, Appellant's claims still necessarily relate to the bankruptcy court's prior proceedings and orders on the bankruptcy estate. Appellant insists that the bankruptcy court lacked ancillary jurisdiction because it merely incorporated the Settlement Agreement into the Plan, and did not specifically issue orders addressing issues such as what constituted breach, the parties to the agreement, or whether there were fiduciary duties. (ECF No. 25 at 12.) However, resolving each of these issues requires looking back to the Settlement Agreement and the Plan, which were overseen and confirmed by the

---

"related to" jurisdiction over a breach of contract claim involving a sale of property from the bankruptcy estate to an unrelated party. *Id.* The appellant in the case argued there was "related to" jurisdiction to address the claim because the confirmed bankruptcy plan had referenced the sale agreement and recognized the debtor's intention to sell. *Id.* at 1128. However, the court found the mere reference to the sale did not create a "close nexus," and the breach of contract action "could have existed entirely apart from the bankruptcy proceeding." *Id.* at 1135. Here, the dispute bears a much closer nexus to the confirmed Plan. The breach of contract and fiduciary duty claims require interpretating the Plan, which incorporates the Settlement Agreement. Accordingly, the claims here are not "entirely apart" from the bankruptcy proceedings.

bankruptcy court. Because the bankruptcy court would be "interpret[ing] and enforce[ing] its own orders," it appropriately has ancillary jurisdiction over the case. *In re Wilshire Courtyard*, 729 F.3d at 1289.

Moreover, "ancillary jurisdiction exists where necessary to preserve a benefit the parties bargained for." *Id.* at 1290. The history of the Plan suggests that the waterfall payment schedule memorialized in the Settlement Agreement was a critical component of the Plan. Again, the Plan not only incorporated the Settlement Agreement, but modified it to include 12 additional condos to be calculated in Lonich's portion of the sale proceeds in order to resolve the dispute between Lonich and SABT and BTM. (ECF No. 16 at 10.) The fact that the Settlement Agreement was specifically modified to resolve a dispute involving Appellant's predecessor, and Appellant is still seeking payment under the Agreement, suggests Appellant brings this appeal to ensure they receive their benefit of the bargain. *See In re Wilshire Courtyard*, 729 F.3d at 1290. Accordingly, the Court also finds that the bankruptcy court had ancillary jurisdiction over the Complaint.

Because the bankruptcy court had both "related to" and "ancillary jurisdiction" over the Complaint, the bankruptcy court properly exercised subject matter jurisdiction and appropriately denied Appellant's motion to remand.

**2. Motion to Dismiss**

Appellant asserts seven grounds for error in challenging the bankruptcy court's order granting Appellees' motion to dismiss. The Court addresses each argument in turn.

**a. Bankruptcy Court's Review of the Motion to Dismiss**

Appellant alleges that the bankruptcy court incorrectly applied the legal standard to Appellees' motion to dismiss when it made findings of fact and relied on its own interpretation of the Settlement Agreement, rather than the pleadings. (ECF No. 12 at 21-22.)

///

///

///

Reviewing *de novo*, the Court finds that the bankruptcy court applied the correct legal standard,[13] and did not make improper findings of fact. In ruling on each of Appellant's claims, the bankruptcy court repeatedly relied on the face of the Complaint and the Settlement Agreement. For example, in evaluating whether BDH, Alex Kendall, Elizabeth Kendall, and Biganeh Madjessi were bound to the Settlement Agreement because they did not sign it, the bankruptcy court specifically pointed to the signature pages on page 37 of the Settlement Agreement, which states: "Please have your clients execute this letter, where indicated below, indicating their approval of the foregoing terms and conditions." (ECF No. 12-2 at 164.) The bankruptcy court also noted that signature pages followed, but Appellees never signed. (*Id.*) Similarly, in addressing whether there was a fiduciary duty between Appellant and these Appellees, the bankruptcy court found that the "[C]omplaint does not allege any other type of relationship giving rise to a position of trust between [the parties.]" (*Id.* at 171.) The bankruptcy court did not make a new factual determination regarding the relationship between the parties, but instead, identified where the Complaint was deficient on its face.

Reviewing these examples, and other instances in the record, the bankruptcy court clearly relied on the plain language of the Settlement Agreement and the face of the Complaint without making findings of fact. Accordingly, the Court finds the bankruptcy court applied the correct legal standard in granting the motion to dismiss.

**b. Differing Interpretations of the Settlement Agreement**

Next, Appellant alleges that the bankruptcy court improperly relied on its own interpretation of the Settlement Agreement, rather than the plain language, in ruling on the motion to dismiss. (ECF No. 12 at 22.) Appellant asserts that the Settlement Agreement is "ambiguous" because of "the existence of alternative interpretations." (*Id.*) However, as discussed above, the bankruptcy court consistently relied on the plain

---

[13]A complaint may be dismissed for "fail[ing] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In granting a 12(b)(6) motion to dismiss, a court must accept well-pleaded factual allegations as true and construe them in light most favorable to plaintiff. *Schwarz v. U.S.*, 234 F.3d 428, 435 (9th Cir. 2000).

language of the Settlement Agreement in coming to its decision. Additionally, simply because the bankruptcy court did not agree with Appellant's "reasonable interpretations" does not render its findings erroneous, as Appellant insists. (ECF No. 25 at 13.) The Court finds no instances where the bankruptcy court recognizes ambiguity in the Settlement Agreement or the Plan, nor where the bankruptcy court unreasonably interprets the Agreement.[14] Accordingly, the Court rejects Appellant's second ground for error.

**c. Breach of Contract Claim**

Appellant alleges the bankruptcy court improperly dismissed the breach of contract claim against every Appellee but BTM. (ECF No. 12 at 23.) The bankruptcy court dismissed this claim against BDH, Alex Kendall, Elizabeth Kendall, and Biganeh Madjessi because they did not sign the Settlement Agreement (collectively "Non-Signatories"). (ECF No. 12-2 at 165.)[15] Appellant disputes this determination, making three arguments. First, it is not admitted that the Non-Signatories did not sign the Settlement Agreement. Second, the Non-Signatories are still parties to the Settlement Agreement even if they did not sign it. Third, the Non-Signatories are jointly and severally liable for any breach committed by any of them. (ECF No. 12 at 24-27.) The Court addresses these arguments in turn.

First, Appellant argues that it has not conducted any discovery nor has any evidence that the Non-Signatories did not sign the Settlement Agreement. (*Id.* at 24.)[16]

---

[14]For example, the bankruptcy court relies solely on the Settlement Agreement to find three reasons to reject finding a fiduciary relationship existed between Appellant and BTM. (ECF No. 12-2 at 172.) First, the Agreement specified that Appellant was the contracting party and creditor of BTM, indicating Appellant was not in a position of trust. (*Id.*) Second, BTM had a "contractual obligation" to pay Appellant under the Agreement if and only if BDH was paid in full. (*Id.* at 172-73.) Third, Appellant and BTM were not "joint venturers" because "the [A]greement specifies that [Appellant] is a creditor of BTM and SABT." (*Id.* at 173.)

[15]The bankruptcy court denied the motion to dismiss the breach of contract claim as to BTM because it found that it did sign the Agreement, was a party to the Forbearance Agreement, and was "obligated and authorized" under the Settlement Agreement to pay Appellant if "funds were or are owed." (ECF No. 12-2 at 168.)

[16]Appellees argue that Appellant cannot raise this issue for the first time on appeal. (ECF No. 16 at 32.) However, the Court can address arguments not raised in the trial

However, Appellant admits that it has no copy of the Settlement Agreement with their signatures. (*Id.*) Without additional facts or evidence, the Court finds this argument unpersuasive.

Second, Appellant challenges the bankruptcy court's determination that the Non-Signatories could not be parties to the Settlement Agreement because they did not sign it. (ECF No. 25 at 14.) As support, Appellant cites *Vita Planning and Landscape Artchitecture, Inc v. HKS Architects, Inc.*, 192 Cal. Rptr. 763, 773 (Cal. Ct. App. 2015), in which the California Court of Appeal found that the absence of signatures did not render the parties' contract unenforceable. However, the Court agrees with Appellees that *Vita Planning* is distinguishable. (ECF No. 16 at 32.) In *Vita Planning,* the appellant conceded that the parties "'conducted themselves as though they had an agreement.'" *Id.* As such, the dispute concerned whether the parties agreed to the terms of an implied agreement. In contrast, here, the dispute does not involve the terms of an implied agreement, but whether an agreement exists between Appellant and parties who did not sign the agreement. *See Vita Planning*, 192 Cal. Rptr. at 773 (quotations omitted).

Moreover, the Court rejects Appellant's contention that the Settlement Agreement does not require the parties' signature to be effective. (ECF No. 12 at 25.) "When it is clear, both from a provision that the proposed written contract would become operative *only* when signed by the parties as well as any other evidence presented by the parties that both parties contemplated that acceptance of the contract's terms would be signified by signing it, the failure to sign the agreement means no binding contract was created." *Banner Ent., Inc v. Superior Ct.*, 72 Cal. Rptr. 2d 598, 603 (Cal. Ct. App. 1998) (emphasis in original). Here, Appellant asserts that the Settlement Agreement does not explicitly state that signing it is the "only way to evidence acceptance." (ECF No. 25 at 14.) However, the Settlement Agreement states, in pertinent part, "Please have your clients execute this letter where indicated below indicating their approval of the foregoing terms

---

court to "prevent a miscarriage of justice or to preserve the integrity of the judicial process." *In re Lakhany*, 538 B.R. at 560.

and conditions," with signature pages following for SABT Parties, BTM Parties, and Lonich. (ECF No. 12-1 at 44-49.) Alex Kendall, Elizabeth Kendall, and BDH were not included for signature. (*Id.*)[17] Reviewing this language and the signatures, the Court agrees with the bankruptcy court that the plain language of the Settlement Agreement clearly indicates a signature is required to bind a party, and that the exclusion of the Non-Signatories and their lack of signatures means they are not parties to the Settlement Agreement.

Additionally, the Court rejects Appellant's argument that the bankruptcy court improperly evaluated the parties' intent to require acceptance by signature. (ECF No. 12 at 25-26.) As discussed, the bankruptcy court properly relied on the plain language of the Settlement Agreement, as well as the presence and absence of parties and signatures, in determing that a signature was required to bind a party. (ECF No. 12-2 at 164-165.) The bankruptcy court did not consider outside conduct or agreement that would evidence the parties' intent to allow acceptance of the Settlement Agreement in other ways. Accordingly, the bankruptcy court properly found that the Settlement Agreement required a signature to be binding.

Lastly, Appellant contends that even if Non-Signatories did not sign the Settlement Agreement, it can be reasonably inferred that they are jointly and severally liable for a breach of contract claim because the Non-Signatories are united as specific parties under the Agreement[18] and would benefit under the Agreement. (ECF No. 12 at 28.) As support, Appellant points to California Civil Code § 1659, which states "where all parties who unite in a promise receive some benefit from the consideration…their promise is presumed to

---

[17]Unlike the BDH Parties, Biganeh Madjlessi was included for signature in the Settlement Agreement. (ECF No. 12-1 at 47-48.) However, the Court agrees with the bankruptcy court that she signed in her official capacity as president of Greenbriar Realty, Inc. and Prime Vest Realty. (ECF No. 12-2 at 164.) The signature page includes Greenbriar Realty, Inc. and Prime Vest Realty Inc., but the signature lines designate "Biganeh Madjlessi, Pres" for signature. Appellant does not dispute this.

[18]Appellant argues the Settlement Agreement 'unites' Biganeh Madjlessi with other Appellees as the "BTM Parties" and BDH, Alex Kendall, and Elizabeth Kendall as the "BDH Parties." (ECF No. 12 at 28.)

be joint and several." Cal. Civ. Code § 1659. The Court is not persuaded. The crux of Appellant's claim is based on the waterfall payment schedule outlined in Paragraph 19 of the Settlement Agreement. However, the only parties named in Paragraph 19 are SABT, BTM, BDH, and Appellant's predecessor, Lonich. (ECF No. 12-1 at 30-32.) Moreover, the Settlement Agreement only obligates SABT and BTM to seek refinancing on their loan. (*Id*. at 30.) Based on their ability to refinance, the Settlement Agreement outlines two possible payment schedules that would disburse the sale proceeds proportionally to SABT, BTM, BDH, and Lonich. (*Id.* at 30-32.) Paragraph 19 does not create obligations by the other unnamed Appellees to support the sale of the condominiums nor disburse the proceeds in accordance with the waterfall payment schedule. (*Id.*) Therefore, except for SABT and BTM's promise to pursue refinancing, the Settlement Agreement does not "unite" Appellees in any promises regarding the distribution of sale proceeds because they are not part of the Agreement.[19]

Moreover, the mere fact that the parties are grouped together in one portion of the Settlement Agreement does not mean that identifying an individual party in another provision implicates the broader group.[20] As Appellees pointed out, identifying SABT,

---

[19]Appellant also argues that Michael Madjlessi, Greenbriar Realty, Prime Vest Realty, and Greenbriar Construction Corporation did make a promise of performance based on Paragraph 16 of the Settlement Agreement and, thus, were in breach. (ECF No. 12 at 30.) The Court agrees with Appellees that this argument is not relevant. Paragraph 16 of the Settlement Agreement specifies "the Parties will negotiate, agree upon and execute a business plan" for the sale procedure and price of the condominiums. (ECF No. 12-1 at 29.) Appellant's breach of contract claim centers on the payment schedule in Paragraph 19 of the Settlement Agreement, not Paragraph 16. (ECF No. 12-1 at 11.) Therefore, these Appellees cannot be held jointly and severally liable for a promise that does not give rise to the breach of contract claim.

[20]Appellant resists the bankruptcy court's conclusion that, even where the agreement is silent as to who would disburse the sale proceeds, SABT and BTM are the "only parties who were obligated to distribute or cause to be distributed any sale proceeds" to Appellant as the owners of the condominium units. (ECF Nos. 12 at 31; 12-2 at 167.) Appellant insists that the silence in the Agreement cannot be read to mean that it is the obligation of one party, but not any other party, to ensure disbursement. (ECF No. 12 at 31.) However, the Court agrees with the bankruptcy court. Paragraph 19 of the Settlement Agreement states that "the following sums shall be paid from the sales proceeds," depending on whether SABT and BTM are able to refinance the loan on the condominiums. (ECF No. 12-1 at 31-32.) SABT and BTM are the sole owners of the units to be sold. (ECF No. 12-1 at 22.) Therefore, even if the Settlement Agreement does not

BTM, and BDH as relevant parties to the waterfall payment schedule is not the same as referencing the broader SABT Parties, BTM Parties, or BDH Parties. (ECF No. 16 at 35.) Because the unnamed parties and Non-Signatories did not agree to be held to the payment schedule nor undertake obligations to disburse proceeds to Appellant under Paragraph 19 of the Settlement Agreement, they cannot be held jointly and severally liable to Appellant. Accordingly the bankruptcy court did not err in dismissing the breach of contract claim against all Appellees but BTM.

**d. Breach of Fiduciary Relationship**

Appellant alleges that the bankruptcy court erred in finding that it was not in a fiduciary relationship with Appellees. Appellant contends it properly pled that: (1) it was in a fiduciary relationship with Appellees, (2) it was a joint venturer with BTM, (3) it was in an agency relationship with BTM, (4) Appellant, BTM, and / or BDH were tenants in common as to the sale proceeds, and (5), because BDH was not Appellant's creditor, it could plausibly be in a fiduciary relationship with BDH. The Court takes each argument in turn.

**i. Fiduciary Relationship**

To plead breach of fiduciary duty, a plaintiff must show: "the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." *Pierce v. Lyman*, 3 Cal. Rptr. 2d 236, 240 (Cal. Ct. App. 1991).[21] A fiduciary relationship is a relationship where "one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party." *Wolf v. Superior Ct.*, 130 Cal. Rptr. 2d 860, 863 (Cal. Ct. App. 2003). Moreover, a fiduciary relationship is "ordinarily synonymous with a 'confidential relation.'" *Rickel v. Schwinn Bicycle Co.* (1982) 192 Cal. Rptr. 732, 735 (Cal. Ct. App. 1983) (citation omitted). A confidential relationship is "founded upon the trust or

---

specifically obligate SABT and BTM to disburse the proceeds, it follows that the owners of the units are the logical party to distribute any proceeds.

[21]The Court applies California law to the following claims because Appellant agrees California law governs the claims in the Complaint. (ECF No. 12 at 42.)

confidence reposed by one person in the integrity and fidelity of another, and likewise precludes the idea of profit or advantage" over the person "in whom the confidence is reposed." *Id.* However, a "contractual right to contingent compensation in the control of another has never, by itself, been sufficient to create a fiduciary relationship where one would not otherwise exist." *Wolf*, 130 Cal. Rptr. 2d at 864.

In its Complaint, Appellant alleged that Appellees "assumed a position of trust" with regard to the sale proceeds and that the failure to pay amounted to a breach of fiduciary duty. (ECF No. 12-1 at 12.)[22] However, Appellant's payment was contingent, as it was never guaranteed under the Settlement Agreement. As discussed, the waterfall payment schedule set out disbursements to various parties, with BDH and third party creditors taking priority over Appellant. (ECF No. 12-1 at 30-32.) This is evident in Paragraph 19(a) which states "If there is a timely Refinance or sale, the sums shall be disbursed as follows…". (*Id.* at 30.) Paragraphs 19(a)(1) to 19(a)(7) then list the parties in the order they would receive payment. (*Id.* at 30-31.)[23] The structure of this waterfall payment plan clearly indicates that Appellant would be seventh in line to receive any sale proceeds—*if* the preceding parties received their payments. (*Id.*) The Court thus finds that Appellees, particularly BTM and SABT, did not assume a position of "trust or confidence" to ensure that Appellant was paid according to the Settlement Agreement. *See Rickel*, 192 Cal. Rptr. 2d at 735. The mere fact that Appellant might be paid according to an agreement that some Appellees were a party to did not create a fiduciary relationship among the parties. Accordingly, the bankruptcy court correctly found that Appellees were not in a fiduciary relationship with Appellant.

---

[22]Again, BDH, Alex Kendall, Elizabeth Kendall, and Biganeh Madjlessi are not parties to the Settlement Agreement. Accordingly, the Court agrees with the bankruptcy court that these Appellees do not owe Appellant a fiduciary duty on this ground. (ECF No. 12-2 at 171.) The discussion here pertains to BTM Parties and SABT Parties' obligations under the Settlement Agreement, and BDH as a recipient of the sale proceeds under the Settlement Agreement and Forbearance Agreement.

[23]Paragraphs 19(b)(1) to (b)(7) repeat the same waterfall structure if SABT is unable to timely refinance or sell the units. (ECF No. 12-1 at 31-32.)

**ii. Joint Venture with BTM**

A joint venture includes an "association of two or more persons who combine their property, skill or knowledge to carry out a single business enterprise for profit." *Holtz v. United Plumbing & Heating Co.*, 319 P.2d 617, 620 (Cal. 1957). Parties to a joint venture must have a "community of interest" or a "joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control." *Id.* It can be deduced based on conduct and statements. *Id.*

The Court rejects Appellant's claim that it entered into a joint venture with BTM with regard to the sale proceeds. As Appellees noted, the Settlement Agreement does not direct Appellant's predecessor, Lonich, to engage in refinancing the loan nor grant Lonich the right to be part of the refinancing effort. (ECF No. 12-1 at 30.) Only SABT and BTM are directed to do so. (*Id.*) Instead, and as Appellant states in its brief, Lonich would only "benefit" from the sale proceeds. (ECF No. 12 at 35.) Therefore, Appellant and BTM did not enter into a "common business undertaking" with the right to "joint control" over the sale proceeds. *See Holtz*, P.2d at 620. The Court also rejects Appellant's contention that Paragraph 16 of the Settlement Agreement, which directs the parties to create a business plan governing the sale of the units, gave rise to a joint venture. (ECF Nos. 12 at 35; 12-1 at 29 ("Business Plan").) Though the Business Plan instructs the parties (SABT, BTM, and Lonich) to "negotiate, agree upon and execute" a plan setting the sale prices and procedures for the unit, setting the terms of a sale is not the same as ensuring a party receives the proceeds of a sale, which is the basis of Appellant's breach of fiduciary duty claim. (ECF No. 12-1 at 12, 29.)[24] Accordingly, the Court finds the

---

[24]Appellant also disputes the bankruptcy court's finding that, because Appellant and BTM and SABT are in a creditor-debtor relationship, they cannot be in a joint venture. (ECF Nos. 12-2 at 173; 25 at 16.) The Ninth Circuit has found that "[a]n arrangement whereby two or more persons share the profits of a common undertaking does not constitute a joint adventure in the absence of power of joint control. Where there is no common management and control of the enterprise and the profits are shared only as compensation or interest for the use of money advanced, no joint adventure exists." *Joe Balestrieri & Co. v. CIR*, 177 F.2d 867, 871 (9th Cir. 1949) (citations omitted). Though a creditor-debtor relationship does not necessarily preclude a joint venture, there is no indication that Appellant exercised "joint control" over the sale proceeds. *See id.* Instead,

bankruptcy court properly concluded that Appellant did not enter into a joint venture with BTM.

### iii. Agency Relationship with SABT and BTM

An agency relationship exists when a principal, or person for whom the work is performed, has "the right to control the activities of the alleged agent." *Kim v. Sumimoto Bank*, 21 Cal. Rptr. 2d 834, 839 (Cal. Ct. App. 1993). A principal must indicate that an agent is acting on his behalf, and the agent "must act or agree to act on his behalf and subject to his control." *van't Rood v. Cnty. of Santa Clara*, 6 Cal. Rptr. 3d 746, 764 (Cal. Ct. App. 2003) (citation omitted). However, "[c]ontrol may not be inferred merely from the fact that one person's act benefits another." *St. Paul Ins. Co. v. Indus. Underwriters Ins. Co*, 262 Cal. Rptr. 490, 495 (Cal. Ct. App. 1989).

Appellant contends that the Business Plan creates a reasonable inference that BTM would, "on behalf of" Appellant's predecessor, sell the units and generate proceeds. (ECF No. 12 at 35.) However, this arrangement does not indicate that BTM would act as Appellant's agent as to the sale proceeds. The mere fact that Appellant would benefit from BTM's act of selling the units does not support an inference that BTM was under Appellant's control. *See St. Paul Ins. Co.*, 262 Cal. Rptr. at 495. Appellant fails to allege other facts showing BTM agreed to and was subject to its control under the Settlement Agreement. Accordingly, the bankruptcy court properly found that BTM was not Appellant's agent.

### iv. Tenants in Common with SABT, BTM, and BDH

Under California Civil Code § 686, "every interest created in favor of several persons" is considered a tenancy in common, unless otherwise specified. Cal. Civ. Code § 686. Unlike a joint tenancy, which requires the four unities of time, title, interest and possession, creating a tenancy in common merely requires "equal right of possession or

---

the Settlement Agreement provided that Appellant would receive the sale proceeds as "compensation or interest" as a creditor. *See id*. Without other facts showing common ownership, the fact that Appellant is a creditor weighs against finding it entered a joint venture with BTM and SABT.

unity of possession." *Wilson v. S.L. Rey, Inc.*, 21 Cal. Rptr. 2d 552, 555 (Cal. Ct. App. 1993). Tenancies in common are not restricted to real property, but also apply to personal property. *See Haster v. Blair*, 107 P.2d 933, 934 (Cal. Ct. App. 1940).

Appellant alleges it and BDH became tenants in common when SABT and BTM executed the Forbearance Agreement assigning to BDH all the sale proceeds. (ECF No. 12 at 38). The Court disagrees. Though a tenancy in common could apply to the sale proceeds as personal property, here, there is no equal right to possession nor unity of possession over the sale proceeds between Appellant and BDH. *See Wilson*, 21 Cal. Rptr. 2d at 555. Again, the waterfall payment schedule is structured so that Appellant would be paid if and only if the prior parties, including BDH, were paid in full first. (ECF No. 12-1 at 30-32.) Under this arrangement, Appellant would never be in equal possession of the sale proceeds with BDH.

Moreover, Appellant alleges that BDH "stepped into" SABT and BTM's shoes and possessed the proceeds when it signed the Forbearance Agreement. (ECF No. 12 at 38.) However, where "cotenants acquire their interests at different times through different instruments, and no relationship of trust and confidence exists between them, then no fiduciary relationship can be found to exist." *Wilson*, 21 Cal. Rptr. 2d at 556. Here, Appellant was never in a fiduciary relationship with SABT or BTM under the Settlement Agreement. Since Appellant is alleging that BDH had acquired a common interest (the sale proceeds) through a different instrument (the Forbearance Agreement), there is no fiduciary relationship between Appellant and BDH. *See id.* Accordingly, the bankruptcy court properly concluded that Appellant was not a tenant in common with BTM and BDH as to the sale proceeds.

**v. Fiduciary Relationship with BDH**

Appellant alleges that, because BDH was not its lender, BDH could enter into a fiduciary relationship with Appellant's predecessor. (ECF No. 12 at 37.) According to Appellant, if the bankruptcy court determined that SABT and BTM did not owe Appellant fiduciary duties because Appellant was their creditor, then the converse must be true.

(ECF No. 12 at 37; 12-2 at 172.); *see also Nymark v. Heart Fed. Savings & Loan Ass'n*, 283 Cal. Rptr. 3d 53, 54 n. 1 (Cal. App. Ct. 1991) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature.") The Court is not persuaded. Appellant fails to explain why merely finding that BDH was not its creditor leads to the inference that Appellant and BDH had a fiduciary relationship. Again, the fact that both Appellant and BDH would be paid in accordance with the waterfall payment plan does not mean BDH assumed a position of "trust or confidence" to ensure that Appellant was also paid. *See Rickel*, 192 Cal. Rptr. 2d at 735; *see also Pierce*, 3 Cal. Rptr. 2d at 240 ("The absence of any of the elements of a fiduciary relationship is "fatal to the cause of action.")

In sum, Appellant has failed to demonstrate that it was in a fiduciary duty with Appellees. Accordingly, the Court finds that the bankruptcy court properly dismissed Appellant's breach of fiduciary duty claim.

**e. Declaratory Relief**

Next, Appellant argues the bankruptcy court improperly dismissed its claim for declaratory relief against Alex Kendall, Elizabeth Kendall, and BDH. Under both California and Nevada law, a plaintiff cannot maintain an action for declaratory relief if a defendant is not a party to the contract. *Oppenheimer v. Gen. Cable Corp.*, 300 P.2d 151, 154 (Cal. Ct. App. 1956); *Wells v. Bank of Nevada*, 522 P.2d 1014, 1018 (1974) (holding appellant did not have standing in a declaratory judgment action because it had no "rights, duties, or obligations" under the challenged agreement).[25] As discussed, Alex Kendall, Elizabeth Kendall, and BDH are not parties to the Settlement Agreement because they did not sign it. Therefore, the bankruptcy court did not err in dismissing the declaratory relief claim.

Appellant also seeks declaratory relief to affirm that BDH acquired the loan with "actual knowledge" of Appellant's right to receive 20% of the gross sale proceeds in

---

[25]Appellant's declaratory relief claims arise from both the Settlement Agreement and the Forbearance Agreement. Therefore, the Court applies both California and Nevada law to the declaratory relief action because Appellant agrees that California law applies to all claims, and that the Forbearance Agreement contains a Nevada choice of law provision. (ECF No. 12 at 42.) However, as later discussed, Appellant disputes that Nevada law applies to its constructive trust claim because it is not seeking to enforce the Forbearance Agreement. (*Id.*)

excess of $17,500,000 under the Settlement Agreement and, thus, took the loan subject to this arrangement. (ECF No. 12 at 39; 25 at 18.) Appellant's argument relies on the Forbearance Agreement, in which SABT and BTM agreed to disburse all the sale proceeds to BDH, without leaving Appellant's 20% share. (ECF No. 12 at 10, 40.) However, again, such a claim for declaratory relief would require that Appellant was party to the Forbearance Agreement. As Appellant alleges, its predecessor was not a party to the Forbearance Agreement. (ECF No. 12 at 10.) Appellant thus cannot maintain a declaratory relief claim against BDH under either agreement. Accordingly, the bankruptcy court properly dismissed Appellant's claim for declaratory relief.

**f. Claim for Accounting**

Appellant argues an accounting is necessary to determine the actual amount of gross sale proceeds exceeding $17,500,000 and, thus, the 20% that Appellant is entitled to receive under the Settlement Agreement. (ECF No. 12 at 40.)

A claim for accounting is an equitable remedy that allows the court "to determine the extent of a misallocation of expenses and damages resulting therefrom" where parties are in a fiduciary relationship. *In re Maxim Integrated Prods., Inc. v. Deriv. Lit.*, 574 F. Supp. 2d 1046, 1067 (N.D. Cal. 2008). An action can be brought when (1) parties are in a fiduciary relationship or (2) where there is no fiduciary relationship, the accounts are "so complicated that an ordinary legal action demanding a fixed sum is impracticable." *Meixner v. Wells Fargo Bank, N.A.*, 101 F.Supp 3d 938, 961 (E.D. Cal. 2015).

Here, the bankruptcy court correctly found an absence of a fiduciary duty between Appellant and Appellees.[26] Moreover, even though a claim of accounting may not require

[26]The bankruptcy court also found Appellant and Appellees did not have a confidential relationship giving rise to a claim for accounting. The Court agrees. Courts have compared a relationships of confidence and trust to a fiduciary relationship. *See Barnes v. Sea Hawai'i Rafting, LLC*, 493 F. Supp. 3d 972, 980 n. 5 (D. Haw. 2020). A confidential relationship can exist even without a fiduciary relationship "when one party gains the confidence of the other and purports to act or advise with the other's interests in mind." *Kudokas v. Balkus*, 103 Cal. Rptr. 318, 321 (Cal. Ct. App. 1972). But nothing in the Settlement Agreement suggests that SABT and BTM gained Appellant's confidence or advised it regarding the proceeds of the sale. Therefore, Appellant cannot maintain a claim for accounting on this ground.

a fiduciary relationship, the disputed amounts are not extraordinarily complicated. *See also Tesselle*, 92 Cal. Rptr. 3d at 715 ("[A]n action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation.") Appellant is seeking to obtain an accounting of the gross sale proceeds so that it can determine the total amount it is owed under the Settlement Agreement. (ECF No. 12 at 40-41.) However, this amount can be made certain through calculation. *See Tesselle*, 92 Cal. Rptr. 3d at 716 (rejecting a claim for accounting for $100,000 because the amount "can be made certain by calculation"). Because Appellant has failed to allege there is a fiduciary relationship and that the gross sale proceeds are a complicated sum requiring a claim for accounting, the bankruptcy court properly dismissed Appellant's claim for accounting.

**g. Constructive Trust**

Appellant argues the bankruptcy court improperly dismissed its constructive trust claim. (ECF No. 12 at 42.) Appellant first contends that the bankruptcy court erred in applying Nevada law. (*Id.*) The bankruptcy court determined that Appellant's constructive trust claim arose under the Forbearance Agreement, which contains a Nevada law choice of law provision. (ECF Nos. 12-1 at 78; 12-2 at 178). On appeal, Appellant argues that the constructive trust claim does not arise from the Forbearance Agreement, but rather, the Settlement Agreement and subsequent events. (ECF No. 12 at 42.) However, in its Complaint, Appellant alleged that, on October 8, 2021, BDH and Alexander Kendall refused Appellant's predecessor's (MRV) request to disburse 20% of the excess gross sale proceeds because of the Forbearance Agreement. (ECF No. 12-1 at 11.) Therefore, Appellant's assertion that Appellees took the proceeds "knowingly" and "wrongful[ly]" in its appeal suggests that the Forbearance Agreement gives rise to Appellant's constructive trust claim. (ECF No. 12 at 42.) Thus, the bankruptcy court did not err in applying Nevada law in accordance with the Forbearance Agreement's choice of law provision.

Under Nevada law, constructive trusts require (1) a confidential relationship, (2) that retention of legal title by the holder against another would be inequitable, and (3) that

a trust is essential to "the effectuation of justice." *Waldman v. Maini*, 195 P.3d 850, 857 (Nev. 2008) (citing to *Locken v. Locken*, 650 P.2d 803, 804-05 (Nev. 1982). Once again, there existed no confidential nor fiduciary relationship between Appellant and Appellees. Accordingly, the bankruptcy court properly dismissed the constructive trust claim.

**3. Dismissal without Leave to Amend**

Appellant argues that the bankruptcy court abused its discretion in denying reconsideration of its order of dismissal without leave to amend. (ECF No. 12 at 43.) A "[d]enial of a motion for relief under Civil Rules 59 and 60 is reviewed for abuse of discretion." *In re Mellem*, 625 B.R. 172, 177 (B.A.P. 9th Cir. 2021). "To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court 'identified the correct legal rule to apply to the relief requested' and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *In re Open Medicine Institute, Inc.*, 639 B.R. 169, 2022 WL 1711774, at *6 (B.A.P. 9th Cir. 2022) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

Applying the two-step inquiry, first, the bankruptcy court applied the proper legal standard. The transcript indicates that, before addressing each of Appellant's claims in order, the bankruptcy court announced each standard of review and appropriately applied the standard for granting leave to amend.[27] (ECF No. 12-2 at 160.) Second, the bankruptcy court did not apply the legal standard in a manner that was illogical, implausible, or without support from the record. The bankruptcy court addressed each cause of action individually, and explained how Appellant's claims were deficient and that an amendment would be futile to save the claims. (ECF No. 12-2 at 167, 174, 178, 179.)

---

[27]The relevant standard in granting leave to amend is whether a proposed amendment would either lack merit or be "futile." *Universal Mortgage Co. v. Prudential Ins. Co.,* 799 F.2d 458, 459 (9th Cir. 1986), In denying reconsideration, the bankruptcy court announced it would apply the following standard: "[g]ranting leave to amend is not appropriate when an amendment cannot cure the deficiency in the complaint." (ECF No. 12-2 at 160). The bankruptcy court cited to *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015),

Because the Court may affirm the bankruptcy court's decision "on any ground fairly supported by the record," *In re Warren*, 568 F.3d at 1116, and because there appears to be no abuse of discretion, the Court finds an absence of abuse of discretion. Therefore, the Court finds that the bankruptcy court correctly granted the motion to dismiss without leave to amend.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that the bankruptcy court's orders denying the motion to remand and granting the motion to dismiss without leave to amend as to all claims, except the breach of contract claim against BTM, is affirmed.

The Clerk of Court is directed enter judgment accordingly and close this case.

DATED THIS 28th Day of September 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE